**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

LEONARDO PINZON FERNANDEZ,
Petitioner,
v.
WARDEN, *et al.*,
Respondents.

Case No. 5:26-cv-03927-ACCV

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

## I. RULING

On July 14, 2026, Leonardo Pinzon Fernandez ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241, against Ernesto Santacruz, Field Office Director, Enforcement and Removal Operations, Los Angeles Field Office, U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, Secretary of the United States Department of Homeland Security ("DHS"); and Todd Blanche, Acting Attorney General of the United States. (Dkt. 1.) For the reasons stated herein, the Court GRANTS the Petition and ORDERS Respondents to release Petitioner Leonardo Pinzon Fernandez (A# 246-683-405) from custody immediately.

///

///

## II. BACKGROUND

Petitioner is a native and citizen of Colombia who entered the United States with his wife and stepdaughter on December 30, 2022. (Dkt. 1 at 2.) Petitioner was apprehended by the United States Border Patrol ("USBP") near El Paso, Texas. (*Id.*) The next day, Petitioner was released by the Department of Homeland Security ("DHS") on Humanitarian Parole under 8 C.F.R. 212(d)(5) until March 3, 2023. (Dkt. 1-3 at 1.) Petitioner has a pending application for asylum and for withholding of removal as of December 29, 2023. (Dkt. 1-4 at 1.) On June 28, 2024, Petitioner was approved for employment authorization from the period of June 27, 2024 through June 26, 2029. (Dkt. 1-5 at 1.) For over three years, Petitioner remained at liberty, established steady employment, filed for asylum, and maintained a fixed residence with his wife and stepdaughter. (*Id.* at 2.)

On June 25, 2026, while at a construction project at an air force base, ICE briefly detained then released Petitioner the same day. (*Id.* at 2.) Two days later, ICE detained Petitioner at his home and took him into custody without notice on June 27, 2026. (*Id.*) The same day, DHS served Petitioner with a Notice to Appear. (Dkt. 1-6 at 1-3.) Petitioner is currently in ICE custody at the Adelanto ICE Processing Center. (*Id.* at 3.)

On July 14, 2026, Petitioner filed his Petition challenging his detention as unlawful in violation his Fifth Amendment due process rights, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the *Accardi* Doctrine. (*Id.* at 12-24.) Among the relief he seeks, Petitioner requests that the Court grant the Petition and issue an order requiring his immediate release. (*Id.* at 16.) Petitioner asserts that he has no criminal history, has fully complied with parole conditions, was issued a valid employment authorization document, and never missed an appointment for his pending asylum application. (*Id.* at 16.)

Petitioner also states that he is married, has a stepdaughter, has developed community ties, and a stable residence over three years since his release on humanitarian parole. (*Id.*)

On July 15, 2026, the Court issued a Notice of General Order 26-05 and Briefing Schedule. (Dkt. 4.) The parties voluntarily consented to the assigned magistrate judge's jurisdiction under General Order 26-05 on July 21, 2026. (Dkt. 6.)

Respondents filed their answer on July 22, 2026. (Dkt. 8.) Respondents argue that "at most" Petitioner is entitled to a "bond hearing to be held before an Immigration Judge under Section 1226(a) . . . subject to the *Bautista* Judgement."[1] (*Id.* at 2.) Petitioner filed his traverse on July 27, 2026. (Dkt. 9.) Petitioner re-asserts his claims that his detention is unlawful in violation of the INA, APA, the *Accardi* doctrine, and his Fifth Amendment due process rights. (*Id.* at 1-5.) Additionally, Petitioner states that he is a member of the *Bautista* judgment but argues that immediate release—not a bond hearing—is the appropriate remedy to address his unlawful detention. (*Id.* at 1, 4-5.)

## III. LEGAL STANDARD

Federal district courts possess the authority to grant petitions for writ of habeas corpus by a person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing

[1] *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) *reconsideration granted in part*, --- F. Supp. 3d ---, 2025 WL 3713982 (Dec. 18, 2025), *and amended and superseded on reconsideration*, --- F. Supp. 3d ---, 2025 WL 3713987 (Dec. 18, 2025).

the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004). "The petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (noting that immigration detainee bears burden of proving by a preponderance of the evidence that he is entitled to habeas relief).

## IV. DISCUSSION

### A. Petitioner Is Not A *Bautista* Bond Eligible Class Member.

Before reviewing Petitioner's claims, the Court addresses Respondents' assertion that Petitioner appears to be covered by the Court's decision in *Bautista*. Specifically, Respondents state that "Petitioner appears to be a member of the Bond Eligible Class certified in" *Bautista*. (Dkt. 8 at 2.) In his traverse, Petitioner states that he is a member of the *Bautista* judgment. (Dkt. 9 at 1.) However, he is not a member of the Bond Eligible Class because the Court in *Bautista* certified the class as "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Bautista*, 2025 WL 3288403, at *2. Here, Petitioner was apprehended and released by DHS on Humanitarian Parole upon his arrival in the United States. (Dkt. 1-3 at 1.) Additionally, Petitioner has a pending asylum application. (Dkt 1-4 at 1-3.) Therefore, the Court finds that Petitioner is not a member of the Bond Eligible Class. *See Bautista*, 2025 WL 3288403, at *2.

### B. Petitioner's Detention Violates Procedural Due Process.

Petitioner argues that the revocation of his parole and his re-detention violate his procedural due process rights under the Fifth Amendment. (Dkt. 1 at 19-22.)

Respondents only argue that "at most" Petitioner would be entitled to "a bond hearing to be held before and Immigration Judge under Section 1226(a)." (Dkt. 8 at 2.) Respondents provide no response to Petitioner's due process claims in their answer. (*See generally* Dkt. 8.) Accordingly, the Court construes Respondents' failure to address Petitioner's due process claims as a concession. *See e.g., Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including Fifth Amendment due process claims); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession); *Aperyan v. Semaia*, No. 5:26-CV-00699, 2026 WL 874734, at *4 (C.D. Cal. Mar. 27, 2026) (same). Nonetheless, the Court analyzes Petitioner's due process claim below for the sake of thoroughness.

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the deprivation "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to noncitizens in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S. Ct. 977, 41 L. Ed. 140 (1896) ("It must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by [the Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law[.]"); *Trump v. J. G. G.*, 604 U.S. 670, 673, 145 S. Ct. 1003, 221 L. Ed. 2d 529 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation modified).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

**1. Protected Liberty Interest**

It is well-established that freedom from government detention is a protected liberty interest. *See Zadvydas*, 533 U.S. at 690. Though the liberty interests of U.S. citizens compared to noncitizens "are not coextensive," the Fifth Amendment nonetheless "entitles [noncitizens] to due process of law in deportation proceedings." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205–06 (9th Cir. 2022) (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)). Many courts in this Circuit have affirmed the principle that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he or] she has a protected liberty interest in remaining out of custody." *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases); *Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025).

Accordingly, Petitioner—who was conditionally released into the United States, has lived in the country since his release, complied with all of the conditions of his release, and has valid work authorization—has a vested liberty interest in remaining free from detention.

**2. Mathews Test**

The Court applies the three-part test established in *Mathews v. Eldridge* to determine whether the government's procedures were constitutionally sufficient. 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (cleaned up).

The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

Because Petitioner was initially conditionally released into the United States, has lived in the community for over three years, has received valid work authorization, received a social security number, established significant community ties, and retained stable employment he has a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards. *See Morrissey v. Brewer*, 408 U.S. 471, 481–82, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) ("The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions . . . . [T]he liberty [of a parolee] is valuable and must be seen as within the protection of the Fourteenth Amendment."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). Here, as noted, Petitioner was released from DHS custody on humanitarian parole and has been living in the community for more than three years complying with the conditions of his release. (Dkt. 1 at 23.) His release constituted an "implied promise" that his liberty would not be revoked unless he failed to live up to the conditions of his release. *See Morrissey*, 408 U.S. at 482.

Accordingly, Petitioner's private interest in retaining his liberty is significant and this factor weighs in Petitioner's favor.

Second, the Court finds that the risk of erroneous deprivation of liberty is high absent the procedural safeguard of a hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community. *Zadvydas*, 533 U.S.

at 693–94. Respondents do not argue that Petitioner is or has been previously determined to be at flight risk or a danger to the community. *See Pinchi*, 792 F. Supp. 3d at 1034 ("As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [Petitioner's] release that ICE determined she was neither."). Respondents do not contest that Petitioner has abided by the conditions of his initial release from Respondents' custody over three years ago. (*See generally* Dkt. 8.) Based on the record before the Court, Petitioner appears to have no criminal history of arrests or convictions. Respondents do not contest this. (*See generally* Dkt. 8.) Moreover, even after ICE briefly detained Petitioner at his job site before releasing him the same day, Petitioner did not appear to flee as he was taken into ICE custody at his home. (Dkt. 1 at 2.) Thus, the Court finds no reason to determine that Petitioner would be a danger to the community. Accordingly, the Court finds that the risk of erroneous deprivation is high, and this factor weighs in Petitioner's favor.

Third, the Court finds that the government has a low interest in keeping Petitioner detained. As explained, the government has not shown that Petitioner's detention serves either to prevent flight or a danger to the community. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("As to the third factor, the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). "Nor can the government suggest that the cost of providing such protections would be fiscally or administratively onerous." *Pinchi*, 792 F. Supp. 3d at 1036. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, 803 F. Supp. 3d 1035 (E.D. Cal. 2025). "The government's interest is further diminished where a person 'has consistently appeared for her immigration hearings . . . and [ ] does not have a criminal record." *Id.* (citation omitted).

After considering all three *Mathews* factors, the Court concludes that Petitioner's

re-detention without any pre-deprivation notice or hearing violates his procedural due process protections. Having found Respondents violated Petitioner's procedural due process rights, the Court need not address Petitioner's remaining claims.

## V. CONCLUSION

For the reasons stated, the Court GRANTS the Petition and ORDERS:

(1) Respondents to release Petitioner Leonardo Pinzon Fernandez (A# 246-683-405) immediately under the same conditions as he was released prior to his re-detention;

(2) Respondents to return all property to Petitioner that was confiscated from him when he was arrested and processed into detention;

(3) Respondents to file a statement with the Court within three days of Petitioner's release, attesting to Respondents' compliance with this Order; and

(4) That any future enforcement actions after Petitioner's release must comply with Due Process requirements.

DATED: August 21, 2026

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge